## GILBERT *vs.* HIS CREDITORS.

APPEAL FROM THE FIRST JUDICIAL DISTRICT.

The words "third persons" in the article 3315 of the *Louisiana Code*, include all who may be interested in the pecuniary standing or solvency of the person against whom mortgages exist, and consequently it includes creditors of every description who may have dealt with the mortgaging debtor in good faith, whilst in ignorance of or before the existence of the right claimed by mortgagee creditors.

The article 3323 of the *Louisiana Code*, implies that mortgages valid against the creditors may be given if they be executed at a time when the debtor is not in failing circumstances.

A mortgage given and inscribed at any time previous to the three months immediately preceding the failure of a debtor, will not be presumed fraudulent.

All dealings between *persons* are presumed to be in good faith which take place while neither of the parties is in failing circumstances.

Where the record does not show by evidence the length of time which elapsed between the inscription of a mortgage and the failure of the mortgagor, it must be viewed as having been made at a period not suspicious.

If it is impossible to reconcile satisfactorily the discrepancies of several articles of the Code, full effect will be given to the last in the order of their arrangement.

By the tableau of distribution filed by the syndic of the creditors of Thomas Gilbert, it appeared that there were assets in his hands to the amount of five thousand one hundred dollars. The privileged claims for costs, commissions, &c. amounted to one thousand one hundred and ninety-nine dollars ninety-five cents. Wallace, Lambeth, and Pope were placed on the tableau as privileged creditors to the amount of two thousand seven hundred and seventy-three dollars thirty cents, for the balance of monies furnished for repairs of steam boat President, secured by mortgage. Several other creditors were placed on the tableau for materials furnished to the same steam boat for sums, all of which together with the mortgage claim equalled the amount of the funds.

Several oppositions were filed to this tableau. John Stacker opposed it, alleging that he was a privileged creditor of the highest order, and should be paid before any other creditor for five thousand dollars and upwards. He denied the alleged debt of Wallace, Lambeth and Pope. His claim was founded on a conventional mortgage executed by the insolvent on the 9th of April, 1831, and inscribed in the office of the register of mortgages, on the 8th of June, 1832. This mortgage was executed to Benjamin F. West, who on the 7th of June, 1831, subrogated Stacker to all his rights therein.

Wallace, Lambeth and Pope, produced a mortgage of Gilbert to them, bearing date on the 2d of January, 1832. It was recorded on the 9th of the following June. Several of the claimants for materials furnished for the steam boat President, produced testimony of the correctness of their charges.

The judge *a quo* overruled Stacker's opposition as regards *bona fide* creditors whose claims existed prior to the day on which the mortgage was recorded, and maintained it as to the claims of creditors since the time of inscription. The claim of Wallace, Lambeth and Pope, was postponed as regards creditors prior to the inscription of their mortgage, and maintained as to subsequent creditors.

Wallace, Lambeth and Pope, appealed.

*Slidell,* for the appellants.

*Hennen,* for Stacker, an opposing creditor.

1. The recording of the acts of Stacker was prior to that of all other creditors, and gives him a preference over all who recorded their acts subsequent to him.

2. The recording of the acts of Stacker avails him against all other creditors.

MATHEWS, J., delivered the opinion of the court.

In this insolvency oppositions are made by several of the creditors to the homologation of a tableau of distribution filed by the syndic. On the tableau the appellants are placed as mortgagee creditors to the amount of $2773 30. Their claim to any preference under the mortgage is opposed by creditors, some chirographic and others claiming privileges, &c. The court below in deciding on the opposition of John Stacker to the tableau, a creditor who claimed a preference by mortgage, decreed that neither he nor the appellants were entitled to any preference over the ordinary creditors, in consequence of the late period of recording their mortgages.. These parties both complain of the judgment as being in this respect erroneous, and insist on the respective preferences by them claimed.

The first question to be settled relates to the correctness of the judgment, denying the preference as claimed by these mortgage creditors. The judge *a quo,* bases his decision on the 3320th art. of the *La. Code,* found in the title which treats of mortgages. To understand the meaning of this article, it is necessary to recur to several of the preceding articles. The article 3314 states the manner in which conventional, judicial, and legal mortgages are acquired, and declares that such mortgages are allowed to prejudice third persons, only when they have been publicly inscribed on records kept for that purpose in the manner directed by subsequent articles. In the French part of the code, which is more intelligible in the present instance, the expression is *que autant qu'elles ont été rendues public par leur inscription, &c.* The 3315 art.

EASTERN DIS.
January, 1833.
═══════
GILBERT
vs.
HIS CREDITORS

The word "third persons" in the article 3315th of the La. Code, include all who may be interested in the pecuniary standing or solvency of the person against whom mortgages exist, and consequently it includes creditors of every description who may have dealt with the mortgaging debtor in good faith, whilst in ignorance of or before the existence of the right claimed by mortgage creditors.

defines the meaning of the terms third persons as used, and designates all persons to be such who are not parties to the act or the judgment on which the mortgage is founded. The arts. 3317, 3318, and 3319, point out the manner in which mortgages must be recorded; and if done as required they have effect from the date. The inscription is to be made within six days, with an allowance of certain additional terms for distance from the place of recording. The art. 3320 declares that if the creditor allows the time to elapse without causing the act or judgment to be recorded, his mortgage shall have effect against third persons dealing in good faith, only from the day when he shall have caused the inscription to be made. Now we have already ascertained by the art. 3315, that by the words *third persons*, as used in this section of the code, are to be understood all persons who are not parties to the act or to the judgment on which the mortgage is founded. The general expression, all persons, certainly embraces all who may be interested in the pecuniary standing or solvency of the person against whom mortgages exist; and consequently creditors of every description will be included, who may have dealt with the mortgaging debtor in good faith, whilst in ignorance of or before the existence of the right claimed by mortgagee creditors.

This doctrine carried to its full extent, will destroy the preference intended to be secured by conventional mortgages over other creditors who were such at the time when the contracts of mortgage were made between the debtor and creditors claiming such preference. And the same want of preference would probably take place even in judicial mortgages in relation to persons who were creditors before the judment was rendered and recorded.

An interpretation which gives this effect to the articles of the code now under consideration, does violence to the maxim which establishes the principle, that *vigilantibus non dormientibus subveniunt leges*, but is in accordance with another principle of our jurisprudence by which the property of a

debtor is considered as a common pledge to all his creditors in the event of failure.

EASTERN DIS.
*January*, 1833.

GILBERT
*vs.*
HIS CREDITORS

If these provisions of law stood alone, they would probably admit of no other fair interpretation except that which leads to the result just stated. But there are subsequent provisions in this code from which an implication follows, that mortgages valid against other creditors may be given if they be executed at a time when the debtor is not in failing circumstances, and even under these circumstances on proof that the creditor paid, in obtaining the mortgage a real and effective value at the moment of the contract. See art. 3323. The art. 3325 relates to the inscription of judgments, and the following article declares that any inscription made after the failure of a debtor, or on the day preceding it, shall have no effect whatever against other creditors. From these articles an irresistible implication results, that mortgages given and inscribed at any time previous to the three months immediately preceding the failure of a debtor would not be presumed fraudulent.

*The article 3323 of the La. Code, implies that mortgages valid against the creditors may be given if they be executed at a time when the debtor is not in failing circumstances.*

*A mortgage given and inscribed at any time previous to the three months immediately preceding the failure of a debtor, will not be presumed fraudulent.*

There is an apparent contradiction between these articles and the 3320th; can they be reconciled? If it be possible to give effect to the provisions of both, just principles of legal interpretation require it should be done.

It is clear that a mortgage gives no preference to a mortgagee creditor over others, except from the date of its inscription, unless this be done within the time prescribed by law which extends its effects to the date of the act. In the present case the mortgages under which the parties claim a preference were not recorded in due time. The preference claimed therefore, commenced only from the dates of inscription against third persons dealing with the debtor in good faith. All dealings between persons are presumed to be in good faith which take place when neither of the parties to a contract is in failing circumstances. But a contract of mortgage may be relieved from its legal taint of fraud by showing that value was paid at the time of the contract by the mortgagee even when made and inscribed *in tiempo inhabil.* The law raises a presumption of fraud

*All dealings between persons are presumed to be in good faith which take place when neither of the parties is in failing circumstances.*

GILBERT
vs.
HIS CREDITORS

When the record does not show by evidence the length of time which elapsed between the inscription of a mortgage and the failure of the mortgagee, it must be viewed as having been made at a period not suspicious.

only in relation to mortgages both given and inscribed at a time suspicious. Such as are given previously, are to be considered as having been executed *bona fide*, unless the contrary be shown by evidence. Our laws, however, reprobate all contracts between a debtor about to fail and part of his creditors, to the prejudice of others; consequently all acts done at such a time ought to be avoided and annulled; and probably even the inscription of a mortgage made under such circumstances would be without effect against other creditors. In the ¯present instance the record as brought up, does not show by any evidence, the length of time which elapsed between the inscription of the mortgages, and the failure of the debtor. They must therefore be viewed as not having been made at a period inauspicious. In cases where a fair value is paid to the debtor who gives a mortgage on his property, his estate is not injured by the contract, and the pledge for payment to the mass of his creditors is consequently not diminished. And in the event of failure, justice requires that persons who have been vigilant in securing themselves by hypothecations, should be preferred to mere chirographic creditors.

In pursuance of a just interpretation of all the provisions of the code relating to the subject under consideration, we are of opinion that the court below erred in refusing the preference claimed by the appellants and the opposing creditor Stacker. Although we may perhaps not have succeeded fully in reconciling the apparent discrepancy in these provisions, full effect is however given to the last, which is in conformity with the maxim that *leges posteriores priores contrarias abrogant.*

If it is impossible to reconcile satisfactorily the discrepancies of several articles of the code, full effect will be given to the last in the order of their arrangement.

It only remains for us to settle the dispute about preference between the mortgagee creditors. This is not a difficult task. Neither of their mortgages was recorded within the time limited by law. They must therefore take effect and give preference from the respective dates of their inscription. If these creditors had caused their mortgages to be inscribed on the same day the rights would have been concurrent. See art. 3321 of the code. But Stacker's was

recorded one day earlier than that of the appellants. His <span class="margin">EASTERN DIS.<br>*January*, 1833.</span> claim must consequently be preferred to theirs; and they be preferred to creditors who have neither privilege nor mortgage.

It was contended in the course of argument, that the opposing creditor Stacker, has not proved the genuineness of his claim. The evidence to support it is a notarial act of mortgage given to Ben. F. West, which was transferred to the claimant by a public act, and the honesty of the claim is no where put at issue upon the record.

It is therefore ordered, adjudged, and decreed, that the judgment of the district court, so far as it referred the preferences claimed by the appellants Wallace, Lambeth and Pope, and by the opposing creditor Stacker, be avoided, reversed, and annulled. And it is further ordered, adjudged, and decreed, that these creditors be placed on the tableau of distirbutions of the insolvent's estate, as entitled to a preference under their mortgages over mere chirographic creditors. The opposing creditor Stacker, to take rank of and be preferred to the appellants.